IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTEMIO GARCIA JR. # 94992-279 )<br>P.O. BOX 1000 )<br>BUTNER, NC  27509, )<br> )<br>v. )<br> )<br>FEDERAL BUREAU OF PRISONS, )<br>320 FIRST ST. N.W. )<br>WASHINGTON, D.C. 20534. ) | No. 1:19-cv-02368 |

## ORIGINAL COMPLAINT

### I.  Introduction

1. This suit is brought pursuant to the Religious Freedom Restoration Act ("RFRA"), which prohibits the federal government from substantially burdening a person's sincere exercise of religion unless that burden is supported by a compelling governmental interest and applied through the least restrictive means. 42 U.S.C. § 2000bb, *et seq*.

2. Plaintiff Artemio Garcia Jr. ("Garcia") is a practicing Christian. Garcia alleges that the Federal Bureau of Prisons' ("BOP") is substantially burdening his exercise of religion because BOP refuses— in violation of RFRA—to surgically remove Garcia's tattoos from his body.

## II. Parties

3. Artemio Garcia Jr. is an inmate incarcerated in federal prison. His federal register number is # 94992-279. His mailing address is FCI Butner Medium I, P.O. BOX 1000, Butner, NC 27509.

4. Defendant Federal Bureau of Prisons is a federal agency. Its mailing address is 320 First St. N.W., Washington, DC 20534.

## III. Jurisdiction

5. This Court has jurisdiction over Garcia's RFRA claims under 28 U.S.C. § 1331.

## IV. Statement of Facts

6. Garcia is a practicing Christian who is incarcerated in federal prison. Garcia sincerely believes, consistent with his Christian faith, that he is unclean in God's eyes because of tattoos on his body.

7. Garcia's beliefs are based in part on the King James Bible which states, "Ye shall not make any cuttings in your flesh for the dead, nor print any marks upon you: I am the Lord." Leviticus 19:28. "Therefore shall ye observe all my statutes, and all my judgments, and do them: I am the Lord." Leviticus 19:37.

8. Garcia believes that he cannot become clean before God until all of his tattoos are removed.

9. The need to be clean before God is a very important part of Garcia's beliefs. Garcia believes, for instance, that cleanliness in the eyes of God is key to Garcia's ability to follow God's word and commands.

10. Each day that Garcia continues to live with tattoos—defilements under God's word—Garcia is unable to purge himself of the sin that his tattoos represent.

11. Unless and until Garcia's tattoos are removed, Garcia believes that he can never live according to God's will nor develop spiritually as God wants him to.

12. Garcia prays multiple times and a day and has spoken to God about his tattoos. Through prayer, God has reaffirmed to Garcia that he wants Garcia to remove all of his tattoos from his body.

13. Consistent with Garcia's sincerely held religious beliefs, Garcia asked the BOP to surgically remove all of his tattoos.

14. On or about July 11, 2018, K.T. Haugen, Correctional Counselor at FCI Butner Medium I, instructed Garcia to report to the medical

department with his request for surgical tattoo removal. According to Counselor Haugen:

> Per Program Statement 6311.04. The Clinical Director shall consider individually any request from an inmate or a BOP medical consultation. If the inmate's circumstances meet the qualifications for plastic/cosmetic surgery, the request will then be forwarded to the next step of the approval process. Please report to sick call to request a appointment with your provider, to further discuss your options and address any concerns you may have.

15. On August 31, 2018, Garcia met with Dr. Van Sickle at FCI Butner concerning his request for surgical removal of his tattoos. Dr. Van Sickle advised Garcia during that meeting that the BOP does not remove tattoos for religious purposes. Dr. Van Sickle advised Garcia that he would recommend that the institution's Utilization Review Committee (URC) deny Garcia's request to remove his tattoos.

16. Garcia's request for tattoo removal was subsequently denied by the institution's Utilization Review Committee (URC) as not medically necessary. The URC reviews requests for specialist medical treatment.

17. Garcia subsequently renewed his request for removal of his tattoos with the chaplain at FCI Butner. On or about September 27, 2018, the chaplain advised Garcia:

> In accordance with BOP Program Statement 6311.04, Plastic Surgery and Identification Records, the BOP does not ordinarily provide plastic surgery for prisoners to correct preexisting disfigurements (including tattoos). To the extent that you are requesting removal of your tattoos, you should continue to seek Health Services, for a determination of whether the procedure is medically necessary in accordance with the Program Statement.

18. Although Garcia specifically and continually asked for removal of his tattoos as an accommodation under RFRA, FCI Butner staff treated Garcia's request for tattoo removal as a purely medical request. FCI Butner staff did this because national BOP policy does not specifically authorize tattoo removal for religious reasons.

19. The first time BOP considered removal of Garcia's tattoos on religious grounds was in response to Garcia's Central Office Administrative Remedy Appeal ("BP-11") that sought removal of Garcia's tattoos consistent with RFRA.

20. A BP-11 is filed with the BOP in Washington, DC.

21. Each BP-11 is assigned to a subject matter expert within the BOP Central Office depending on the grievance. For instance, BP-11s concerning religious matters are typically assigned to Central Office chaplaincy staff for a response.

22. BOP staff in Washington, D.C. reviewed Garcia's request for removal of his tattoos on religious grounds and denied relief on January 30, 2019. According to the BOP's "National Inmate Appeals Administrator, "[b]ecause of your criminal history and prison conduct, the Bureau finds it has a compelling interest in prison security, including your personal safety, in denying your request to remove the tattoos. There is no feasible alternative to accommodate your request."

23. BOP Central Office staff also reiterated that Garcia was ineligible for removal of his tattoos under Program Statement 6311.04 because that "policy specifically addresses removal of tattoos as plastic surgery and explains that such procedures are only performed when medically necessary or if it is necessary for the good order and the security of the institution. Your request did not meet either of these two requirements."

24. Program Statement 6311.04 treats tattoo removal as "for the good order and security of the institution" when "necessary in order to help conceal the identity of WITSEC inmates."

25. Robert Hood, former Warden at ADX Florence, the highest security BOP institution in the country, has stated, "[r]emoving visible

tattoos, especially those that are antisocial or related to gangs, improve an offender's chance for staying out of prison and obtaining employment. Tattoo removal demonstrates an investment in change for individuals wanting to re-enter society."[1]

26.     BOP's refusal to remove Garcia's tattoos substantially burdens his sincere exercise of religion. BOP does not have a compelling governmental interest, as applied to Garcia, that supports its refusal to remove Garcia's tattoos. In addition, BOP's outright refusal to honor Garcia's request for removal of his tattoos is not the least restrictive means under RFRA.

**Count One**

27.     Paragraphs 1-26 are hereby reincorporated as fully set forth herein.

28.     BOP has a national policy or practice of refusing to authorize medical procedures to remove tattoos from inmates for religious reasons.

---

[1]     https://www.correctionsone.com/facility-design-and-operation/articles/337274187-How-tattoo-removal-can-change-the-face-of-corrections/

29. BOP's national policy or practice of refusing to remove tattoos for religious reasons violates RFRA.

**Count Two**

30. Paragraphs 1-26 are hereby reincorporated as fully set forth herein.

31. BOP is violating RFRA by refusing to authorize the removal of Garcia's tattoos consistent with RFRA.

**Relief Requested**

32. Garcia requests the following injunctive relief:

    (a)   An order requiring the BOP to surgically remove Garcia's tattoos consistent with RFRA;

33. A declaratory judgment that BOP's national policies or practices, as described in Counts One, violate RFRA.

34. Garcia requests his costs and attorney's fees.

35. Finally, Garcia urges the Court to grant him any and all other relief the Court deems just and fit.

**Original Complaint**                                                                                       8
*Garcia v. Federal Bureau of Prisons*

Respectfully submitted,

/s/Brandon Sample
Brandon Sample
E-mail: Brandon@brandonsample.com
Bar ID: TX0144

/s/ Zachary Lee Newland
Zachary Lee Newland
E-mail: zach@brandonsample.com
Bar ID: VT002

Brandon Sample PLC
P.O. BOX 250
Rutland, VT 05702
Tel: 802-444-4357
https://brandonsample.com/
https://sentencing.net

*Counsel for Artemio Garcia Jr.*